The next case today is Cindy Curtis et al. v. Nicholas Galakatos, appeal number 20-1846. Attorney Giafra, please introduce yourself for the record and proceed with your argument. May it please the court, my name is Thomas Giafra and I represent the appellants in this matter. This case is one on a complete abuse of discretion in dismissing a case involving three individual United States citizens back to Greece for a case that involves severe personal injury where liability is not... Before you proceed, could you give us an update on what, if anything, is going on in Greece as far as a criminal investigation? As far as I know, it's still ongoing. There's a criminal investigation. The operator of the Galakatos vessel was charged. My client is presumably going to be charged as well. I think they're in the process of submitting statements and depositions and expert reports, so it's a different process than we have here in New York. All I can tell you, Your Honor, with certainty, is the Greek Coast Guard conducted an investigation, which is attached to our record. They concluded that the cause of the accident was the misconduct of the operator of the Galakatos vessel and charged him at the scene with causing a shipwreck. Thank you. Your Honor, as I said, this is a case involving two small motorboats in Greece, one owned by a U.S. citizen, one owned by another U.S. citizen. It is undisputed, based on this record, that the cause of this accident was the respondent's vessel striking my vessel in the rear, proceeding over my vessel, causing my vessel to sink, causing my client to sustain massive personal injuries. That is the undisputed fact. Now, what has been raised below is that somehow there was a swimming race going on in some area in this Strait of Paros and that somehow the operator of the Galakatos vessel was within his rights to somehow ram my client's vessel to prevent some kind of accident. Now, notably, there's no proof of that anywhere. Under U.S. maritime law, that's complete nonsense. You can't do that. And the defendants, while they submitted an extensive affidavit from a Greek attorney, the Greek attorney never said that this would impose liability on my client under Greek law. So that's kind of significant, I think. In addition, no evidence was submitted whatsoever regarding this claim or the basis of the dismissal other than attorney information and belief. Now, one of the things that I noted going through the record is we obtained a translated copy of the Coast Guard report by the responding authorities. Now, the defendants, despite having a Greek attorney, submitted nothing. They submitted a list of blank names. Now, we know there are ten people on the two vessels. We know that three of them are within my client's control because two of the defendants are the plaintiffs. One is Mr. Kambouris' sister. The operator of the vessel is Mr. Galakatos' employee. Another person on the Galakatos vessel is Mr. Galakatos' employee's wife. So all these people are in the control of the respective parties. So if we consider this case, which I think has no liability issues based on the evidence that's before the court, this was not a proper dismissal. In addition, the court is well aware of the very high burden of proof that a defendant has to dismiss a case involving three U.S. individual citizens. This isn't a case where we have a foreign defendant, U.S. citizen, or where we have U.S. citizens bootstrapped with foreign defendants. We have three U.S. citizens. In addition, this case was filed in the District Court of Boston. The defendant lives in Beacon Hill, in walking distance of the courthouse, and yet he has the temerity to come to court and say it's more convenient for him to be litigating this case in Greece. We don't dispute that Greece is an appropriate alternative forum, but what we do submit to the court, and we believe the evidence clearly shows based on the law, that the trial court well exceeded their authority on both the public factors ground and the private factors ground. I'll be very brief on the public factors. The district court held that the public factors favored Greece, and they based this on the fact that the accident was in Greece, some of the medical treatment was in Greece, and some of the evidence is in Greece. It cited a case that this court reversed on other grounds, Nanju. Ironically enough, in Nanju, the district court and this court held that those factors are basically even. So as a matter of law, on public grounds, the court committed directly contravening this court's authority and prior holdings. It was a clear error on public grounds. It's clearly... Counsel, excuse me. It seems to me you're dealing with a discretionary call by the district court, and it seems to me in making that call, the district court, yes, mentioned all the factors that you mentioned, but looked very much at what you would call the private interests, the burdens on the private parties, where most of the witnesses are, and all of that. The district court made the point that you have all these witnesses who are in Greece, both doctors and lay witnesses, witnesses to the accident, also made the point, or maybe it's made in the briefing, that in the Greek courts, much of the evidence is in writing. You don't actually have to be there. To the extent that it's truly the testimony of your clients would be critical, much of that, in the normal course, would be submitted in writing. All of that seemed to be important to the court in deciding that, in the final analysis, Greece was the place where this trial should be held. There are all those public factors, but in addition, you've got all the witnesses were there. To the extent that witnesses are here, their testimony can be submitted in writing. So what's wrong with that analysis? Well, what's wrong with that analysis is this, Your Honor. Defendants had a burden of proof to show materiality of the witness testimony. Now, we know there were 10 people on the two vessels. There's a list of names of people with Greek last names. The big jump is being made that since they had a Greek last name, that means they reside in Greece. In fact, Mr. Gimboras is listed as a Greek resident. He lives in New York. So what's wrong with that is the defendant had a heavy burden of proof. They had to show the materiality. They had to show why this evidence was important, why it wasn't duplicative. They showed none of the above. They submitted a list of names without any context, without anything related to the relevance of that testimony. Because, look, it's a collision between two small motorboats. This isn't a major ship sinking. It's two small motorboats colliding. Now, the other witnesses, the relevance of them, I don't know what they were. The court below doesn't know what they were. They could be the people who dragged my client's boat out of the water. I don't know what kind of relevance that is to this case at all. Now, with regard to the medical witnesses, my client only had treatment in Greece for about a month. She was transferred back to the U.S. She was hospitalized in the U.S. She was hospitalized in the U.S. for another almost two months. Still is under the care of five different physicians and more and a mental health provider for her injuries. Now, why can't that testimony be submitted in writing? There's no suggestion that their testimony would not be highly important to any determination of damages. But, again, the normal practice seems to be that testimony like that is submitted in writing. So their testimony can be submitted in writing. Well, Your Honor, I don't know that that's true because it says it's May. The affidavit from the Greek attorney said May. And, again, I'm not a Greek attorney. I don't practice in Greece. But there was nothing so concrete on that. But by the same token, there's been no proof that any of these witnesses that they say are so important, that they can't identify why they're so important, can't be taken here. For example, one of the ten on their list is their own employee. There was a child on the boat they were on. I don't know how important that is. But if there's five people on the Galatacos boat and there's three people on my boat, and if we're going to assume that liability is an issue when there's an admitted striking from the rear of our vessel and sinking of our vessel, mind you, there was no question there was a head on, a side on. It was right over the back, over the engine, sinking it. So they disputed liability. And so liability, if I read their brief correctly, is going to be an issue. Although it does concern me that we don't know who on this list might be a liability witness. I don't know either, Your Honor. All I can tell you is there were the people on my boat, there were the people on their boat. Everybody on my boat can testify in the United States. They didn't even bother going to the person who was operating their boat, who was his employee, to get an affidavit saying, I won't come to Massachusetts, I won't testify. They provided the court below with a list. Five minutes, counsel. I'm sorry? Five minutes. Okay. And in addition, the court didn't consider the issues related to my client. How is she supposed to go to Greece, find a lawyer to take on a case that now is being handled on a contingency basis? How is she to be involved in the representation of herself in a language she doesn't understand, in a culture she doesn't understand, and try to deal with something that has disabled her and put her in a wheelchair? The burdens in this case and the burdens that are being put on the plaintiff far exceed any burdens being placed on the defendants. It's mind-boggling how much of a ---- We lost your volume, Counselor. You muted yourself accidentally. I can't think of any burden to justify putting this kind of burden on a disabled person in the United States who is in a wheelchair to try to litigate her case with another United States citizen in a foreign court. And in addition, Your Honors, the court didn't consider, you know, the issues regarding my client. Do we need to know if her testimony can be submitted in writing? I don't know that it matters if her testimony can be submitted in writing because I think she's been, if you apply this court's holding in Nanju to this matter, we have a stronger case to keep this case in Boston than they did in the Nanju case, which is the controlling precedent in this circuit which came out during the pendency of this appeal, which lays out all of the elements that we argued before the court below, which by applying those elements in Nanju, the defendants were Canadian. Here we have an American defendant being sued in his own backyard. That's a strong presumption and you compare Nanju where this court held that forcing somebody to go to the areas where they suffered a great trauma, and the court has the photographs that show what this accident scene looked like, showed what Ms. Curtis looked like while she's getting pulled out of the water. One can't imagine a worse trauma subject somebody to. Counsel, may I ask you, the district court, I think, cited the fact that there are 13, potentially 13 witnesses to the accident. I just noted the number. You are correct. The district court did not go on to say that we have had representations, evidentiary submissions in the form of affidavits from the defendant, that these 13 witnesses have anything to say of relevance or importance in this case. Is it your position, and we'd have to look at the law on this, in order for that fact to be considered by the district court, there had to be, in effect, evidentiary submissions as to what they would have to testify, what they might offer in terms of resolving this case. That makes it sound like this is almost like a summary judgment proceeding where there's been all sorts of discovery, and then there are filings made on the basis of that discovery. Are the courts supposed to turn these four unknown convenience proceedings into that kind of heavy evidentiary proceeding? That seems to be what you're saying. Is that the law? Well, that's what happened in Nanju. There were affidavits submitted from a variety of witnesses. There was discovery submitted by a variety of witnesses. This court considered that testimony. This court considered the materiality of the witness's testimony, compared the materiality of the testimony, because the defendants satisfied their high, high burden of proof, which the defendants did not do here. First Circuit law, I'm looking at Mercier v. Sheraton, specifically say there's no blanket rule that a defendant affirmatively demonstrate by affidavit the unavailability of a foreign witness and the significance of the witness's testimony. Isn't that the precedent that you have to get around? Well, no, because I think I look at Nanju, which came after that case. But just because it's done in one case doesn't mean it has to be done in all cases. I agree, right? It doesn't have to be done in all cases, but if a U.S. citizen is seeking to have another U.S. citizen go to a foreign court, there needs to be more evidence submitted for the relevance and materiality of those witnesses' testimony, which is the law in this circuit, other than to just submit a list of names. I mean, that's the issue here. They did nothing, nothing. They couldn't even identify what one of these people, what they knew, what their relevance is. There were these other people. I don't know who they were. I know there were ten people on these two ships, boats, and that's it. I don't know that these people witnessed the occurrence. I don't know what these people, nobody does. The court doesn't even know because it's just that list of names. So, I believe that, you know, the heavy burden is not met here and that all of the inconvenience and the factors that are going against the plaintiff that are similar to what happened in Nanju are falling squarely on my client's shoulders based on a specious argument regarding potential liability. Thank you, Counselor. Attorney Gioffre, please mute your audio and video. Attorney Paulson, please unmute your audio and video, introduce yourself for the record, and proceed with your argument. Thank you. May it please the Court, Bruce Paulson for appelli Nicholas Galakadhos. Why don't I start at the end of Mr. Gioffre's presentation and first make it clear that serious unfairness will result if our client does not have access to proof, which is one of the private interest factors, including and most importantly the witnesses in Greece, to the accident, to the criminal proceeding. He will not be able to defend this case. There are serious issues of liability that Mr. Gioffre brushes off that this is a simple rear-end collision. The material submitted by the plaintiff… How do we know that these folks are witnesses to anything? If you look at pages 131 to 135 of the appendix, Mr. Gioffre's Greek attorney, Mr. Gerasimou, submits a translation of a portion of the Greek Coast Guard report that notes, among other things, that there were three passengers aboard the Galani, there were seven aboard the Marina. It identifies the name of the Coast Guardsman who took the distress call. There is also in Mr. Karamitsios' affidavit a list of all of those individuals who provided sworn testimony in the criminal proceeding. So there are witnesses. In addition, there are other witnesses named the person who pulled the wreck out of the water. All these people are named in the record. The record is not devoid of proof, and Mr. Gioffre misstates the sufficiency of the Evans argument raised for the first time on appeal, which way overstates what's required here. Indeed, it is mercier, based on Justice Marshall's decision in Reno, where he noted that the Third Circuit had suggested that defendants seeking foreign nonconvenience dismissal must submit affidavits identifying the witnesses. The Third Circuit suggested that affidavits were required identifying the witnesses they would call and what testimonies they would provide. Such detail is not necessary. Requiring extensive investigation would defeat the purpose of the motion. This is indeed a preliminary motion. It is not a motion for summary judgment. It is not a mortgage foreclosure where every I and dot T has to be crossed. Here, substantial information was before Judge O'Toole, information about those who witnessed the accident, those who were aboard the vessels. It should be clear, and I think it was clear to the judge who inferred that these were important witnesses and that severe unfairness would be worked on our client were he not be able to proceed in Greece and that issues of proof would, in fact, be exacerbated if the trial was to proceed here as opposed to in the United States and that these factors, which he weighed carefully and explicitly going through all of the public and private factors set forth in Gilbert adopted by Reno and adopted further by the First Circuit in Interface Adelson and Nanju and applied them carefully. And he didn't make any of the errors that would give rise to a clear abuse of discretion on the three-part test where he failed to consider a material factor or substantially relied on an improper factor or erred in weighing the factors. Counsel, is it clear that a trial here would be a jury trial? Is that... No, that's not clear because this is a maritime case. Right. And just briefly about... I have the impression that Judge O'Toole was... Maybe I'm confusing what he said with something that may have been in the briefs, but I thought he was concerned about the prospect of jurors here having to deal with Greek law, hearing witnesses who do not speak English. There'd be a lot of translation issues. I mean, I thought he was troubled by the prospect of a jury trying to deal with all that, but in fact, as you say, this may not be a jury trial at all. It may not. I don't think that that is wholly established yet, but, you know, as Judge Haight mentioned in this wide case, which is cited by Judge O'Toole, in the public interest factors, courts and juries should not have foreign disputes imposed upon them when they have no relation to the litigation. And the same would be true of the court. The evidence is all in Greek. It's Greek law applied, you know, by U.S. court. Everything's going to have to be translated. These are substantial public interest factors in connection with Judge O'Toole's analysis. So, and of course, you know, the public interest factor mentioned in Gilbert that there's a... How do we know these folks live in Greece? You know, going back again to Reynaud, Mercier, and Interface... It's got to be some way to measure materiality. It has got to be some level of detail, even if it doesn't rise to, you know, an exacting level. We've got to have some information in order to weigh the public and private interest. But simply saying there were 13 people without at least knowing where they live, if they, in fact, only speak Greek, knowing something about their relationship to the accident, it doesn't make sense to me that we can weigh the interest. But we do know that all the witnesses aboard the vessels are identified. The Coast Guard officer is identified. We know they are identified by name. We don't know anything about where they live. We don't know anything about the languages that they speak. We don't know anything about what they saw. Well, to go back again to Reynaud, you know, at this point in this kind of inquiry, requiring extensive investigation would defeat the purpose of the motion. Whether these people can be reached and found... The plaintiff is usually presumed to have a right to have a case tried in the form of her choosing. So we're talking about the burden being on the defendant to show why this is form nonconvenient. Yes, and Judge O'Toole obviously found that that burden was met, and even though it was a chosen form by a U.S. plaintiff. Well, how do you distinguish Nandu? Nandu, I think there's a very important distinction that came up that's described in detail in the appellate decision. And in Nandu, of course, the very tragic drowning in a pool in Montreal, Canada. And there was a list of witnesses, you know, in Canada, but nobody witnessed the drowning except two of the decedent's children who resided here. And those key witnesses... But we knew that because we knew that. Here, we don't know anything about these people that are listed as to what they saw. We don't know that in this case. They were aboard the vessel. They provided sworn testimony in the ongoing criminal prosecution or criminal investigation, and they were interviewed by the Coast Guard. The Coast Guard officer took sobriety tests of the people involved. There's a fair amount of information in this Coast Guard report, which I think on its face demonstrates the significance of the witnesses. Yes, they're only listed by name. That's true. And we've not conducted an investigation to find out precisely what they would testify to because that's not our burden under Reno, Interface, Mercier, and other cases. The fact is that the access to proof, the private interest factor, which obviously was a focus of Judge O'Toole's decision, the access to proof is what our client doesn't have. He can't defend the case without being able to defend the liability portion. The swimming race that his vessel was in the process of guarding is something that's going to have information and evidence that's going to have to be developed in Greece by the people involved, the people in the race, the people on the boats, the people listed in those. The plaintiff's counsel makes the point that it's become a very common practice to have depositions taken. The witnesses who are from Greece, I guess maybe we'll assume for the purpose of the question that they're from Greece, that there are all sorts of procedures. They can be deposed, and their recorded testimony can then be made available in the proceedings. So it seems to me that the argument that your client would not have access to proof strikes me as considerably overstated. There are ways of making sure that the witnesses whose testimony have to be part of this case, that that testimony can be made part of the case in the way that the appellant is arguing. Although they are beyond the reach of compulsory process here, which Judge O'Toole pointed out. They are not reachable here. Yes, you can have a videotaped deposition, and there was no discovery below. There was a motion for discovery seeking the deposition of Mr. Galakatos, which Judge O'Toole denied. That's not been appealed. No, there was no discovery here. This would be a cross-border case, whether without compulsory process, any of those witnesses would be available to help shape the defense on behalf of Mr. Galakatos. This is, I think, why Judge O'Toole found that this was such a serious burden to him and serious offense. So the U.S. and Greece are part of the Hague Evidence Convention. They are both parties to that convention, that is true. And that would not allow your client to obtain depositions in Greece? I am not sure that that testimony could be compelled in Greece, as I sit here. But there are parties to the convention. Whether deposition testimony would be available at all would be a question of Greek law and whether the Greek central authority would permit it. Can I ask another question about Greek law? Your brief suggested that a litigant party is not permitted to testify under Greek law. I don't understand that. Does that mean the plaintiffs won't be able to testify? The plaintiffs will be able to testify in writing. I think there was a question in Mr. Karametsios' affidavit about whether they would be able to do a video testimony. But they will be able to testify in writing. And there is a preference in Greek procedure and it's laid out in the papers for written testimony as opposed to live. And even so, of course, the question of adequate alternative form, which that really goes to, has been conceded by the plaintiff in this case. Counsel, there is... I can stand the obvious. This is a difficult case. It was a difficult case for the district court. I mean, somebody is going to be disadvantaged here. I mean, it is an unattractive picture that you have this woman who was horribly injured in Greece. She's now back in this country, still recovering. Faced the need, perhaps, if she fully wants to protect her rights to go to Greece. The defendant is not Greek. The defendant is a resident of Massachusetts. As Judge Thompson points out, the plaintiff chose to sue in Massachusetts. And the choice of forum is supposed to be very important in these forum non-convenience analysis. There seems something almost inescapably unfair about what's happening here. Just on the issue of fairness, how do you assess that? Well, I think, as I said before, I mean, the word we keep using is inconvenience. And perhaps that's historically in our jurisprudence, and perhaps that's the wrong word. It's inconvenient to have to drive a mile to the gas station if there's one closer at home. But here, there's a serious unfairness worked on Mr. Galaktikos by proceeding here simply because of the access to proof that, yes, there are grievous injuries, and this is a tough case. I will agree entirely. But he's got to be able to defend it, and he's got to be able to defend the liability portion of it. And I don't see how he does that without those fact witnesses to the collision. Collisions are complicated. Those of us in the Admiralty see this from time to time, whether it's recreational boats or tankers. There are rules of the road. There are questions of who had a proper lookout. All the people who are on board the vessels and who witnessed the collision are going to be crucial to defending the case. And I don't see how that happens anywhere other than Greece. I don't mean to keep harping on this, but we don't know if they are witnesses to the accident. They could have been below deck if there was a below deck. It could have been looking in the opposite direction. We don't know. They would have to be deposed and interviewed in Greece where they can be compelled to testify. Time, counsel. Thank you, Your Honor, for your consideration. Thank you. That concludes argument in this case. Attorney Giuffra and Attorney Paulson, you should disconnect from the hearing at this time.